# JAMES H. REES ET AL.

## v.

# OTTO PELTZER ET AL.

1. INJUNCTION BOND—SUIT ON—ASSESSMENT OF DAMAGES ON DISSOLU-
TION—ACT OF 1861.—The mode of assessing damages on dissolution of
an injunction, provided by the Act of 1861, is not exclusive, so that in case
of a failure to have damages so assessed, none can be recovered in any other
mode. The statute provides a new remedy, and vests courts of chancery
with powers they did not previously possess, but there is nothing in its
language which in terms takes away the common law remedy on the bond.

2. CONSTRUCTION OF ACT OF 1861.—Where the bond is conditioned for
the payment of such damages as may be awarded against the complainant
on dissolution of the injunction, such condition has, since the act of 1861,
been held to relate solely to damages awarded in the manner provided by the
act, so that in the absence of such award, the condition has not been broken,
and no recovery can be had thereunder; but this rule does not apply to con-
ditions in the bond so framed as to require the payment of damages or the
performance of any other act, irrespective of whether damages are awarded
on dissolution of the injunction or not.

3. CONDITION TO PAY DAMAGES FOR WRONGFUL SUING OUT OF INJUNC-
TION.—The bond in suit was conditioned for the payment of all costs and
damages that should be awarded in case the injunction was dissolved, and
also for the payment of all costs and damages that should accrue by reason
of the wrongful suing out of the injunction. These two conditions are inde-
pendent of each other, and the obligees are at liberty to disregard the former
condition and assign breaches of the latter only; and suit for a breach of the
latter condition may be maintained, although there has been no assessment of
damages as provided by the Act of 1861.

4. DAMAGES TO PART OF OBLIGEES NOT RECOVERABLE.—Where the bond
is conditioned for the payment to all the obligees, naming them, "all costs
and damages that shall accrue by reason of the wrongful suing out of the in-
junction," it is an undertaking to pay to the obligees jointly, and no recovery
can be had for damages sustained by a part only of the obligees.

5. DAMAGES PENDING APPEAL, AFTER DISSOLUTION OF INJUNCTION NOT
RECOVERABLE.—The dismissal of the bill operated as a dissolution of the in-
junction, and although the injunction was continued in force by perfecting an
appeal to the Supreme Court, no damages sustained by reason thereof can
be recovered under the condition in the bond providing for the payment of
damages which should accrue by reason of the wrongful suing out of the in-
junction. Resort must be had to the bond for appeal for the recovery of such
damages.

6. ATTORNEY'S FEES—PROOF.—In the assessment of damages, the jury
allowed $2,500 for counsel fees. The testimony upon this point introduced at

the trial was that of several members of the bar, who testified in substance that the services rendered by appellee's counsel in the injunction suit were reasonably worth $2,500; there was no proof that appellees had paid or become liable to pay their counsel said sum or any other sum, or that they had agreed to pay what their services were reasonably worth. This was insufficient. It should have been shown how much appellees had paid or become liable to pay their counsel, and that it was the usual and customary fee paid for such services.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. JUDD & WHITEHOUSE for appellants; contended that the damages should have been assessed under the act of 1861, and that they could not be recovered in this action; and cited 1 Gross' Stat. 459; Laws 1861, 133; Roberts v. Fahs, 36 Ill. 268; Russell et al. v. Rogers et al. 56 Ill. 176; Brownfield et al. v. Brownfield, 58 Ill. 152; McWilliams et al. v. Morgan, 70 Ill. 551; Mix v. Vail, et al. Ill. Sup. Ct. Sept. T. 1877; Mix et al. v. Singleton, Ill. Sup. Ct. Sept. T. 1877; Rev. Stat. 1874, 580; Winkler v. Winkler, 40 Ill. 179.

That if the bond, being a statutory bond, contained conditions not authorized by the statute, such conditions should be rejected as surplusage : United States v. —— 1 Brock. 195; Dixon v. United States, 1 Brock. 177; Walker v. Chapman, 22 Ala. 116; Shunk v. Miller, 5 Pa. St. 250; Erlinger v. The People, 36 Ill. 458; Tomlin v. Green 39 Ill. 225.

That damages to only part of the obligees are not recoverable: Safford v. Miller, et al. 59 Ill. 205; Ovington v. Smith et al. 78 Ill. 250; Waters v. Simpson, 2 Gilm. 570; Sharp v. Bedell, 5 Gilm. 88; Miller v. Stewart, 9 Wheat. 680; St. L. A. & R. I. R. R. Co. v. Coultas, 33 Ill. 188; Farni v. Tesson, 1 Black. 309.

Damages accruing after dissolution of injunction are not recoverable : Elder et al. v. Sabin et al. 66 Ill. 126; Jevne et al. v. Osgood et al. 57 Ill. 340; Bullock v. Ferguson, 30 Ala. 227; Ferguson et al. v. Babers, Adm'r, 24 Ala. 402; Mix et al. v. Singleton et al. Ill. Sup. Ct. Sept. T. 1877.

As to allowance of counsel fees in estimating the damages, and insufficiency of proof thereof: Jevne et al. v. Osgood et al. 57 Ill. 340; Collins et al. v. Sinclair et al. 51 Ill. 328.

Rees et al. v. Peltzer et al.

Mr. M. W. Robinson, and Mr. A. W. Green, for appellees; upon the question of counsel fees, cited Ryan et al. v. Anderson et al. 25 Ill. 372; High on Injunctions, § 973; School Directors v. Trustees of Schools, 66 Ill. 247; Mason et al. v. Shawneetown, 77 Ill. 533; Cummings et al. v. Burleson et al. 78 Ill. 281; City of Champaign v. Patterson, 50 Ill. 61.

That the act of 1861, in relation to assessment of damages on dissolution of an injunction, is not exclusive of all other modes of assessing such damages: Phelps v. Foster, 18 Ill. 309; Hibbard v. McKindley, 28 Ill. 240; Silsbee v. Lucas, 53 Ill. 479; Colcord v. Sylvester, 66 Ill. 540; Garcie v. Sheldon, 3 Barb. 232.

That damages accruing to a part only of the obligees may be recovered: Cabell v. Vaughan, 1 Saund. 291; Rollo v. Yate, Yelv. 177; Farni v. Tesson, 1 Black. 309; Pearce v. Hitchcock, 2 Com. 388; Sims & Hollis v. Harris, 8 B. Mon. 55; Hibbard v. McKindley, 28 Ill. 240; Vesey v. Mantell, 9 Mees. & W. 323; Pugh v. Stringfield, 93 Eng. C. L. 364; Mehaffy v. Lytle, 1 Watts. 314; Bird v. Washburn, 10 Pick. 223; Boyd et al. v. Martin et al. 10 Ala. 700; Sweigert v. Berk, 8 Serg. & Rawle, 306; Watts v. Sanders, 10 B. Mon. 372; Pearce v. Attrey, 14 W. Va. 22.

As to damages after dissolution of the injunction: Bentley v. Joslin, Hemp. 218; Gray v. Veirs, 33 Md. 159; Wallis v. Dilley, 7 Md. 237; Ryan v. Anderson, 25 Ill. 372.

Substantial justice has been done, and the verdict ought not to be disturbed: Newkirk v. Cone, 18 Ill. 449; Dishon et al. v. Schorr, 19 Ill. 59; McConnell v. Kibbe, 33 Ill. 174; Boyington v. Holmes, 38 Ill. 59; Pahlman v. King, 49 Ill. 266.

Bailey, J.  This was an action of debt on an injunction bond, brought by Otto Peltzer, Gustavus R. Hoffman, Edward A. Fox, and six others, against James H. Rees, Elisha E. Hundley, Luther H. Pierce, Mahlon D. Ogden and Edward H. Sheldon.

The declaration describes a bond in the penal sum of $10,-000, executed by the defendants to the plaintiffs, bearing date September 30th, 1872, and which, after reciting that said Rees,

Hundley and Pierce had filed their bill of complaint in the Circuit Court of Cook county, against said Peltzer, Hoffman, Fox, and said six other obligees, for an injunction to restrain them from further proceeding to publish "Peltzer's Atlas of Chicago," and that said court had allowed an injunction for that purpose upon said Rees, Hundley and Pierce, giving bond and security as provided by law, was conditioned for the payment by said Rees, Hundley and Pierce to said obligees of all costs and damages that should accrue by reason of the wrongful suing out of said injunction, and also all costs and damages which should be awarded against said complainants in case said injunction should be dissolved.

The circumstances out of which the controversy grew are briefly as follows: Sometime prior to the great fire of October, 1871, the firm of Rees, Pierce & Co., consisting of said Rees, Hundley and Pierce, real estate dealers, had caused to be made for their own use in their business, a complete set of maps and plats of the city of Chicago, including its several additions and subdivisions. Said maps and plats, about two hundred and eighty in number, were drawn upon a uniform scale of one hundred feet to the inch, so that each covered about eighty acres of land, and was a complete representation of the several lots, blocks, streets and alleys therein contained, with the measurements and locations thereof. These maps and plats were originally compiled by taking copies of those on record in the public offices of the county, and were afterwards improved and perfected from data derived from other authentic sources. In the course of their preparation, which had occupied many years, a large amount of money, skill, judgment and labor had been expended, whereby they had been brought to a high degree of perfection, and were the source of great profit to the proprietors. It also appears that a similar set of maps and plats of the city of Chicago, with its various additions and subdivisions, had in like manner been procured by the firm of Ogden & Sheldon, who were also dealers in real estate, for use in their business.

After the destruction of the public records of the county by the great fire of October, 1871, these two sets of maps and plats, as it appears, were the only complete maps of Chicago in ex-

istence compiled from the public records or other authentic sources. An agreement was thereupon entered into between Rees, Pierce & Co. and Ogden & Sheldon, to use the two sets jointly, and divide equally between the two firms the profits arising therefrom. Subsequently, on application of Otto Peltzer, who was then clerk of the board of public works of Chicago, permission was given by said firms to take a copy of said maps and plats for the use of said board, upon the distinct understanding and agreement that the copy thus obtained should not be copied or published or used in any manner except for the official purposes of the board. It was afterwards ascertained that said Peltzer, notwithstanding said agreement, had taken copies of the maps and plats thus in possession of the board, and that he, in company with said Hoffman and Fox, was engaged in lithographing and publishing the same for sale as " Peltzer's Atlas of Chicago."

To restrain the publication of said atlas, said Rees, Pierce & Co., on the 30th day of September, 1872, filed in the Circuit Court of Cook county their bill in chancery against said Peltzer, Hoffman and Fox, and six other persons, composing a firm of lithographers, who were engaged in lithographing said maps, praying for an injunction restraining such publication. On this bill the Circuit Judge endorsed an order allowing the injunction, on complainants filing a bond in the sum of $10,000, with Ogden and Sheldon as sureties, conditioned according to law. In pursuance of this order, the bond described in the declaration in this suit was executed, and an injunction issued.

On the 11th day of December, 1872, the injunction suit was heard in the Circuit Court, and upon such hearing the bill was dismissed for want of equity. The complainants, the instant this decision was rendered, took an appeal therefrom to the Supreme Court, and filed their appeal bond in the penal sum of $20,000, conditioned for the due prosecution of said appeal and the payment of costs, interest and damages rendered or to be rendered against the complainants, in case said decree should be affirmed in the Supreme Court. It appears that no suggestion of damages was filed in the Circuit Court at the time of the entry of the decree dismissing the bill, and

no damages were awarded against the complainant in that court in the chancery suit. On the 16th day of June, 1875, the Supreme Court rendered its decision affirming the decree of the Circuit Court.

On the trial of the present suit, appellees were permitted to prove the additional expense and labor to which Peltzer, Hoffman and Fox were necessarily put in publishing their atlas by reason of said injunction, both before the entry of the decree of the Circuit Court and during the pendency of said appeal, and also the reasonable value of counsel fees for services in litigating the injunction suit, both in the Circuit and Supreme Courts. The jury found the issues for appellees, and assessed the damages sustained by Peltzer, Hoffman and Fox by reason of the breaches of said bond at $6,886, specifying in their verdict the items of which said damages were composed, as follows: For legal services, $2,500; for the expenses of getting out the new maps, $2,663; for interest on same from June 9th, 1873, to December 8th, 1877, $723; for extra services by Peltzer, $1,000. On this verdict judgment was rendered in favor of appellees against appellants for $10,000 debt, and $6,886 damages, the debt to be discharged on payment of the damages.

Appellants have urged a number of grounds for the reversal of this judgment, which, so far as we deem 'necessary to a proper decision of the case, we will now consider in their order.

It is insisted that, as there were no damages awarded by the Court of Chancery upon the dissolution of the injunction, as provided by the act of 1861, none can now be recovered in this suit. The act referred to is as follows :

"In all cases where an injunction is dissolved by any Court of Chancery in this State, the court after dissolving such injunction, and before finally disposing of the suit, upon the party claiming damages by reason of such injunction, suggesting in writing the nature and amount thereof, shall hear evidence and assess damages as the nature of the case may require, and to equity appertain to the party damnified by such injunction, and may award execution to collect the same." Laws 1861, p. 133.

This act no doubt governs the rights of the parties under the bond in question so far as applicable, unaffected by the

Rees et al. v. Peltzer et al.

amendment of 1874, said bond having been executed prior to said amendment. Such was the holding of the Supreme Court in the recent case of Mix v. Vail et al. (unreported).

The point made, is that the mode of obtaining an assessment of damages on dissolution of an injunction provided by the act of 1861 is exclusive, so that in case of failure to have damages so assessed none can be recovered in any other mode. After careful consideration we are unable to yield our assent to this view.

The statute, it is true, provides a new remedy, and vests courts of chancery with powers they did not previously possess, but there is nothing in its language which in terms takes away the common law remedy on the injunction bond, nor do we perceive that such result follows by any necessary implication. Where the bond is conditioned for the payment of such damages as may be awarded against the complainant on dissolution of the injunction, such condition has, since the act of 1861, very properly been held to relate solely to damages awarded in the mode provided by that act, so that in the absence of such award the condition is not broken, and no recovery can be had thereunder. We cannot see how the same rule can be said to apply to conditions so framed as to require the payment of damages or the performance of any other act irrespective of whether damages are awarded on dissolution of the injunction or not.

We are referred to a number of decisions by the Supreme Court under the law of 1861, but none of them seem to sustain the doctrine contended for by appellant's counsel. They all hold that where the condition is, that the obligors will pay all damages that may be awarded against the complainants in case the injunction is dissolved, no breach of the condition can take place unless there is a previous award of damages, and consequently that in the absence of such award no suit can be maintained on the bond. These decisions do not proceed upon the principle that the remedy provided by the act of 1861 is exclusive, but that this particular condition must be held to embrace only damages assessed as provided by the act. In one of the cases referred to, the court in terms admit that if the

condition had been different the rule would no doubt be otherwise: Russell et al. v. Rogers et al. 56 Ill. 176. We are referred to no case of a suit upon an injunction bond conditioned as in this case for the payment of all damages that should accrue by reason of the wrongful suing out of the injunction, where it was held that no recovery could be had in the absence of a previous award of damages.

It is true the bond in the present case is conditioned for the payment of all costs and damages that should be awarded against the complainants in case the injunction should be dissolved, but it also contains the further condition for the payment of all costs and damages that should accrue by reason of the wrongful suing out of the injunction. These two conditions are independent of each other, and appellees were at liberty to entirely disregard the former, and assign breaches of the latter only.

The next proposition submitted on behalf of appellant, is that under the bond sued on no damages are recoverable beyond those suffered by all the obligees jointly.

The only damages alleged in the declaration or proved at the trial, were those sustained by Peltzer, Hoffman and Fox, and in which these co-obligors did not participate, and the jury in their verdict expressly limited their assessment to the damages sustained by Peltzer, Hoffman and Fox alone.

The liability of the obligors for damages sustained by three of the obligees alone must depend upon the terms of the bond itself. It is not disputed that a bond might be so framed as to impose upon the obligors a liability to pay damages of this character. The only question is, does this bond impose such liability? The undertaking of the sureties is *strictissimi juris*, and cannot be extended beyond the precise terms of the obligation. The language of the bond is as follows:

" Now therefore the condition of the above obligation is such that if the above bounden James H. Rees, Elisha E. Hundley and Luther H. Pierce, their executors or administrators, or any of them, shall and do well and truly pay or cause to be paid to the said Otto Peltzer, G. R. Hoffman, Edward A. Fox, Bernard Essroger, Edward Ruehlow, Francis Doniat, Bernard H. W.

Rees et al. v. Peltzer et al.

Zastro-Kussow, Henry Betz and Ferdinand Knapwurst, their executors, administrators or assigns, all costs and damages that shall accrue by reason of the wrongful suing out of the injunction," etc.

This seems clearly to be an undertaking to pay damages *to all the obligees jointly*, and is not an undertaking to pay to a portion of the obligees such damages as they might sustain.

In Ovington v. Smith et al. 78 Ill. 250, the condition of the injunction bond sued on was that the obligors should pay or cause to be paid to George W. Smith and Daniel D. Schroeder, their heirs, etc., all such costs and damages as should be awarded against the complainant in case the injunction should be dissolved. It appeared that the injunction had been dissolved as to Schroeder, but not as to Smith, and that upon the dissolution of the injunction the court awarded damages to Schroeder. It was held that the undertaking of the obligors was to pay Smith and Schroeder such damages as should be awarded against complainant upon dissolving the injunction, and that there was no undertaking to pay Schroeder such damages as he should sustain upon dissolution of the injunction, as to him alone. See, also, Safford v. Miller, 59 Ill. 205; St. L. A. & R. I. R. R. Co. v. Coultas, 33 Id. 190.

In this case the undertaking being expressly to pay certain damages to all the obligees jointly, it will be intended that the damages contemplated were those in which the obligees were jointly interested, and not those with which a portion of them had nothing whatever to do. Had the bond provided for the payment to the obligors, or any or either of them, such damages as they might respectively sustain, the rule would doubtless have been otherwise. But we are of the opinion that under the bond as it reads, no damages can be recovered except such as were sustained by all the obligees. No such damages being averred in the declaration, proved on the trial or found by the jury, the judgment must necessarily be reversed.

It is next urged that under the bond in suit, no damages are recoverable except those which accrued prior to the dissolution of the injunction by the Circuit Court.

The decree dismissing the bill operated undoubtedly as a dis-

solution of the injunction, but the immediate filing of an appeal bond continued it in force until the affirmance of the decree by the Supreme Court. Appellees were permitted to prove and recover their damages, not only up to the time of the dissolution of the injunction by the Circuit Court, but during the pendency of the appeal; and also to recover for counsel fees for services of counsel in the Supreme Court. This was error.

The condition of the bond providing for payment of the damages which should accrue by reason of the wrongful suing out of the injunction cannot be held to cover any damages which accrued by reason of wrongfully continuing the injunction in force by means of the appeal bond. The injunction bond can only be held to cover damages up to the dissolution, at the time the decree was entered dismissing the bill. As to subsequent damages, the parties must resort to their appeal bond.

The recent case of Mix v. Singleton et al. (unreported), was a suit upon an appeal bond given upon an appeal from a decree dissolving an injunction, and one of the conditions of that bond was that the obligors should pay all damages caused *by wrongfully suing out* the injunction. In the opinion the Supreme Court say : "No condition of the bond obligates defendants to pay such damages as plaintiffs might sustain by reason of the injunction being kept in force by their appeal. Any construction that would make defendants responsible for such damages as might thereafter be sustained, would be to enlarge the undertaking of the sureties on the bond beyond anything expressed in the bond itself. The measure of the liability of sureties is fixed by the terms of the instrument they may sign, and we do not understand such undertaking can be enlarged or varied by judicial construction. That would impose upon a mere surety obligations he had never assumed, and perhaps would have been unwilling to take upon himself. Had this bond been conditioned that defendants should pay such damages as plaintiffs might sustain by wrongfully keeping the injunction in force by the appeal, then the breaches assigned would be more appropriate."

The foregoing case is, we think, decisive of this question, and compels the conclusion that the judgment is erroneous,

in that it includes damages accruing during the pendency of the appeal.

Complaint is also made of the insufficiency of the proof on which the jury in assessing damages allowed $2,500 for counsel fees. On the trial a number of witnesses were produced by appellees, who were members of the Chicago bar, and who testified in substance that the services rendered by appellees' counsel in the injunction suit in both the Circuit and Supreme Courts, were reasonably and fairly worth $2,500. There was no proof that appellees had paid, or become liable to pay their counsel for said services, said sum or any other sum, or that there was any agreement to pay them what their services were reasonably worth. This proof was, we think, clearly insufficient. In order to entitle themselves to an allowance of counsel fees in the assessment of damages, appellees should have proved what they had paid or become liable to pay, and that it was the usual and customary fee paid for such services. Jevne et al. v. Osgood et al. 57 Ill. 347.

In accordance with the views above expressed, the judgment must be reversed and the cause remanded.

