**H. E. Prowell, Plaintiff-Appellee, v. Twin Mills Lumber Corporation, Defendant-Appellant.**

**Gen. No. 66–99.**

Fifth District.

February 14, 1967.

Fowler & Novick, of Marion, and Hart & Hart, of Benton, for appellant.

Elmer Jenkins, of Benton, for appellee.

GOLDENHERSH, J.

Defendant appeals from the judgment of the Circuit Court of Franklin County entered upon a jury verdict in the amount of $15,000.

As grounds for reversal, defendant argues that the verdict is not supported by the evidence, the verdict is against the manifest weight of the evidence, the court erred in giving an instruction offered by plaintiff, and erred further in refusing to give an instruction tendered by defendant.

The testimony shows that on the morning of November 5, 1963, plaintiff had left Mt. Vernon at approximately 11:00 a. m., and was driving south on Route 37. Route 37 is a two-lane highway extending in a general northerly and southerly direction. The road was wet and slippery. At about 11:15 a. m., a short distance north of Bonnie, his car ran off the east side of the road, his car turned end-over-end three times, and plaintiff was injured.

Plaintiff testified that about 4 miles north of Bonnie, he came up behind a truck and followed it 3 or 4 miles. The truck was traveling at a speed of 45 to 50 miles per hour, and plaintiff followed at a distance of approximately 50 to 60 feet from the rear of the truck. He described the truck as being a two-ton, or ton and a half flatbed truck, with a faded red cab, and two plates that extended across the rear of the cab, so mounted that they did not obstruct the rear window. The truck was not loaded, but there were some load chains on the bed.

A short distance north of Bonnie, plaintiff "got a clear passing lane," honked his horn and pulled off into the left or northbound lane; when he was 3 to 5 feet to the rear of the truck, the truck, without signal or warning, pulled into the northbound lane, plaintiff applied his brakes to avoid running under the truck, his car started sliding, and he went off the road.

Charles Bell, employed by defendant as a truck driver, was driving a 1958 Chevrolet two-ton flat bottom truck owned by defendant, south on Route 37. He described the truck as having a red cab, and a flat steel bed. There were vertical iron pipes welded to the bed of the truck, several inches to the rear of the cab. A steel plate, which extended across the width of the cab, was mounted on the pipes, approximately 18 inches below the rear window. A board, also extending the entire width of the cab, was bolted to the pipes, at a height even with the top of the cab.

When he was approximately a mile north of Bonnie, he approached, and followed 300 to 400 feet behind, a red truck with solid sides on the bed; he thought they were "coal sides." The cab of this truck was red. As he came over a crest in the road he saw an automobile which he later learned was plaintiff's, lying in the ditch east of the highway. Bell testified further that he drove a short distance beyond the point where plaintiff's car was lying, turned around in a private driveway, and drove back to the scene. While he was in the driveway, the other truck, which had turned around in the Bonnie Camp Ground Road, just south of where Bell had turned, passed him, and he followed the truck to the point where he had seen plaintiff's car. Both he and the other truck driver pulled off the road, onto the shoulder, and parked. He specifically denied ever having driven in front of plaintiff's car, and further denied that at any time that morning, he had driven onto the east half of the pavement.

Harry Mullinix, a resident of Hot Springs, Arkansas, testified by deposition, that on the morning in question he had been visiting his parents in Johnston City, and was driving to Mt. Vernon, where he had formerly resided, to visit some friends. Just north of Bonnie, at a distance of a quarter of a mile, he saw a red truck traveling south. A car came out from behind the truck, ran off the road on the left-hand side, went into the ditch and turned over "approximately twice." The truck came south to a road marked "Bonnie Camp Ground Road," pulled into the road, backed out, drove north to where the car was off the road, pulled off onto the east shoulder and parked. Mullinix stopped behind the truck, decided there was nothing he could do, and drove on. He described the truck as a red, straight, flatbed, one and a half-ton truck. He saw no other trucks at the scene at anytime.

On cross-examination he stated that as the truck approached him, he noticed nothing unusual about its movements. When he saw what had happened, he slowed his car, pulled off the pavement onto the shoulder "momentarily," and then proceeded northward. It was during this brief stop that he saw the truck complete its turn and start north. He was unable to say whether the plaintiff's automobile had pulled even with the truck prior to running off the road. He stated the truck had sides. He did not see the truck come across the center line, and the truck, when he saw it, was in its lane of travel.

A police officer, called to the scene, stated that there were a number of automobiles gathered when he arrived there, but only one pickup truck, and one straight bed truck.

A witness who lived in the immediate vicinity testified that he came to the scene immediately after the occurrence, and saw only one truck there.

Defendant argues that the jury's verdict is unsupported by the evidence, and is against the manifest weight of the evidence, in that plaintiff did not make a positive identification of the truck that allegedly caused his injury, and that inconsistencies in his testimony, and discrepancies between his discovery deposition and his testimony at the trial, show that defendant's truck was not the vehicle involved in the occurrence.

An understandable presentation of defendant's contentions requires a review of certain portions of plaintiff's testimony. Plaintiff's exhibit 7 is a photograph of a truck, which was identified by Lawrence Finazzo, president of defendant, as being a truck owned by defendant. Upon being asked by his attorney whether he could identify the vehicle shown in the photograph, plaintiff answered, "I would definitely say this is the vehicle that run me off the road, exactly one like it." In response to a later question, plaintiff again referring to the exhibit, answered, "This truck, as I said before, is the truck that run me off the road or is exactly like the one that run me off the road." In answer to a third question propounded by his counsel, he gave a similar answer. On cross-examination, counsel for the defendant, asked the following question:

"Q. I believe you told Mr. Jenkins that plaintiff's exhibit 7 is the truck that ran you off the road, as you say, or one like it, and you don't honestly know whether it's the one that ran you off the road or not, do you?"

to which plaintiff replied:

"It sure looks like the one that ran me off the road."

To a later question, he answered:

"Well, I'd almost stake my life on it. No sir, I don't honestly know. I'll give you a direct answer."

Defendant contends that the testimony of Mullinix, because of the many differences between the truck portrayed in plaintiff's exhibit 7 and the truck described by Mullinix, shows clearly that defendant's truck was not involved. Defendant also argues that plaintiff's testimony with respect to the cause of his injury is contradicted by that of Mullinix, because the latter did not see the truck cross the center line, and at all times saw it in its own lane.

In support of its contention that the evidence failed sufficiently to identify its truck, defendant cites the cases of Southwestern Transp. Co. v. Chambliss, 197 Ark 865, 125 SW2d 123 (1939); Wright v. Gordon's Transport, 162 F2d 590 (CCA 5th, 1947); and Lambert v. Travelers Indemnity Co. (La App 1949), 42 So2d 146.

We have examined these opinions and with respect to Southwestern Transp. Co. v. Chambliss, point out that in Auto Transports v. May (Sup Ct of Ark, 1955), 275 SW2d 767, a case in which the facts are more nearly like those in this case, the Supreme Court of Arkansas distinguished the cases, and affirmed a judgment for the plaintiff. Under the circumstances, we do not find the Chambliss case to be persuasive.

We do not consider Lambert v. Travelers Indemnity Co. as authority for defendant's contention, for the reason that the Louisiana rule is different from that of Illinois as hereinafter discussed, since in Louisiana the plaintiff was required to establish indentity of the vehicle "to a reasonable certainty by a fair preponderance of the evidence." See Gregoire v. Ohio Cas. Ins. Co. (La App), 158 So2d 379, 386.

Wright v. Gordon's Transport is so clearly distinguishable on the facts as to require no further comment.

■ ■ ". . . reasonable inferences may be drawn by a jury from established facts, and a verdict may not be set aside merely because the jury could have drawn different inferences from the evidence; it is one of the

jury's duties to settle the dispute by choosing what seems to them to be the most reasonable inference; . . . ." Stowers v. Carp, 29 Ill App2d 52, 63, 172 NE2d 370.

██ "A court of review can set aside a verdict as being against the manifest weight of the evidence only when it is obvious or clearly evident that the jurors have arrived at an incorrect result. Romines v. Illinois Motor Freight, Inc., 21 Ill App2d 380, 158 NE2d 97 (1959). It is for the jury alone to determine the credibility of witnesses and the weight of the evidence on controverted questions of fact. A verdict based on conflicting evidence and approved by the trial judge should not be disturbed on appeal unless contrary to the manifest weight of the evidence; that is, an opposite conclusion must be clearly evident. Ritter v. Hatteberg, 14 Ill App2d 548, 145 NE2d 119, (1957). Manifest means clearly evident, clear, plain, indisputable. Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 72 NE2d 705 (1947)." Brayfield v. Johnson, 62 Ill App2d 59, 63, 210 NE2d 28.

██ ██ Applying these rules to the evidence in this record, we cannot say that the verdict is against the manifest weight of the evidence. The discrepancies in the testimony relative to the description of the vehicle are no greater than those frequently found when witnesses are called upon to describe a vehicle involved in an occurrence two years prior to the date of trial. Nor does the fact that plaintiff qualified his testimony as to the identity of the vehicle in the manner above set out preclude the jury's finding that this was, in fact, the truck involved in the occurrence.

██ With respect to the alleged discrepancies and inconsistencies between plaintiff's testimony and his discovery deposition, the applicable rule is stated in Guthrie v. Van Hyfte, 36 Ill2d 252, 222 NE2d 492, wherein the Supreme Court, at page 258, said: "The fact that a witness, be he a party or otherwise, has

made out-of-court statements inconsistent with his sworn testimony does not per se destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies. (Citing cases.) Defendant argues that the contradictory statements here were those of plaintiff, himself, and cites numerous law review articles, textwriters and decisions to the effect that such statements constitute substantive evidence against him of the facts stated. Such is, of course, the rule, and proof of such statements was here admitted. It then became the duty of the trier of fact—the jury—to evaluate the sworn testimony, the prior inconsistent statements and the explanations thereof, giving to the various witnesses such credence as the jurors determined proper. (Citing cases.)"

■ Defendant contends that the testimony of Mullinix contradicts that of plaintiff, in that he stated he did not notice anything unusual about the movements of the truck and did not, at any time, see it cross the center line. An examination of the questions and answers to which defendant refers shows the testimony is not contradictory to that of the plaintiff. Assuming, arguendo, a direct contradiction in the testimony, the jury were not precluded from finding plaintiff's version of the occurrence to be true. Wisniewski v. Shimashus, 22 Ill2d 451, 176 NE2d 781; Highley v. American Exchange Nat. Bank, 185 Ill 565, 57 NE 436; Rindskoph, Stern, Lauer & Co. v. Kuder, 145 Ill 607, 34 NE 484.

■ In the conference on instructions, defendant objected to the giving of plaintiff's instruction No. 12 (IPI 21.01), and urges here that it invites the jury to "indulge in speculation, guess and conjecture." Supreme Court Rule 239 (formerly Rule 25–1) directs that an instruction contained in IPI, when applicable, shall be used unless it does not accurately state the law. In our opinion, the instruction accurately states the law and the court did not err in giving it.

Defendant contends that the court erred in refusing to give its instruction No. 8 which reads: "When I say that a party has the burden of proof on any proposition, I mean that such party must prove such proposition by the greater weight of the evidence."

This instruction is not in IPI, the subject is adequately covered in IPI 21.01 given as plaintiff's No. 12, and the court's ruling was not error.

For the reasons herein set forth, the judgment of the Circuit Court of Franklin County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.